

MAY 29 2012

Clerk, U.S. District Court
By: ~~~~~~~~~~ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LIONEL DRAKE, PLAINTIFF
vs

Case Number 12-2115-EFM-JPO

COX ENTERPRISES INC
COX COMMUNICATIONS INC
COX COMMUNICATIONS KANSAS LLC
COX MEDIA LLC,   DEFENDANTS

## AMENDED COMPLAINT

1   This action is brought to recover damages suffered by Plaintiff caused by Defendants refusal to allow a competitor access to the essential facility cable television,  and defendants illegal restraint of trade in the commercial religion based television program and consumer products market.

## JURISDICTION AND VENUE

2   This Court has subject matter jurisdiction:   28 USC 1337 and 28 USC 1331.   This case arises under Section 2 of the Sherman Act, 15 USC Sections 2 and 15,   and Section 4 and Section 16 of The Clayton Act,   15 USC Section 26.

3   Venue is proper in this judicial district:   15 USC Section 22. All defendants can be found in this district.   All defendants transact business in this district.   Many of the acts that gave rise to the claims in this action occurred in this district.   And the damages were suffered by Plaintiff in this district.

## PARTIES

4   Plaintiff is a freelance writer and television producer.   Plaintiff is a competitor of defendants in the media communications industry. Plaintiff and defendants provide competing news,   educational information and entertainment.

5   Cox Enterprises Inc is a media communications company which owns and controls the other defendants.   Cox Enterprises Inc owns and controls Cox cable television,   which comprises more than one third of America's dominant communications network, cable television.

## THE RELEVANT MARKET

### The Geographic Market In This Case

6       The relevant geographic market in this case is the United States. Defendants do sell commercial airtime to commercially market religion based television shows and religion based consumer products on a national level, in many different states, including Arizona, Arkansas, California, Connecticut, Florida, Georgia, Idaho, Iowa, Kansas, Louisiana, Massachusetts, Nebraska, Nevada, North Carolina, Ohio, Oklahoma, Rhode Island, and Virginia.

### The Product Market In This Case

7       The relevant product market in this case are religion based television shows and religion based consumer products such as books, CDs and DVDs. These products sell religion and religious beliefs. The rules of reasonable interchangeability and cross elasticity of demand can not be applied to these type of products because it is impossible for anyone to say that the views and beliefs of one religion can be interchanged with another.

## THE RELEVANT MARKET

8      Each year in the United States numerous producers of television programs spend billions of dollars buying commercial air time on cable television to commercially market religion based television programs and consumer products, books, CDs, DVDs, etc. Each producer, and each program, competing for audience share and market share, are compelled to buy commercial air time on cable television because there is no practical alternative to cable television.

9      Cable television is the only practical mass media forum available for the commercial marketing of religion based television programs and consumer products. Broadcast television is simply not competitive. In fact, broadcast stations are nothing more than a part of cable television now, since most consumers simply do not have reception capability to receive broadcast signals, and so the result is broadcast channels can only be watched on cable television. This demonstrates, that all television is totally dominated by cable television, and in order to be competitive, commercial marketing of religion based television programs and consumer products requires

access to commercial air time on cable television because cable television is essential and indispensable to the commercial marketing of religion based television programs and the commercial marketing religion based consumer products.

10  Commercial demand for religion based television programs and consumer products is tremendous. Each year, television programs that explore religion from a historical, scientific, and theological perspective generate billions of dollars in sales of books, CDs, DVDs, and other commercial religion based consumer products. Churches and religious organizations that spend heavily on commercial air time on cable television have seen their revenues skyrocket, and sales of their books and other religion based consumer products increase dramatically when commercial air time on cable television is purchased.

11  Religion based television shows that are not produced by religious organizations also experience tremendous commercial success because they have access to commercial air time on cable television. Shows like Bible Prophecies and Mysteries of the Bible generate sales of books and CDs all over the world. The commercial success in marketing religion based shows and consumer products is due to having access

to commercial air time on that essential facility, cable television.

## THERE HAS BEEN PRIOR DEALING IN THIS CASE

12   Plaintiff is the producer of several 30 second television shows that have been shown on Cox cable television. The 30 second television shows produced by plaintiff provide news, educational information, and entertainment that competes with defendants. Plaintiff's 30 second television shows offer consumers alternative views on religious thought, as well as religion based consumer products such as books, CDs and DVDs. Plaintiff's 30 second television shows have been shown on Cox cable television in 2006 and 2009, on cable networks MSNBC, The History Channel, Fox Network, CNN, and during the Larry King show and other popular cable shows.

13   Now, defendants refuse to sell plaintiff any more commercial air time on Cox cable television as they have in the past, despite the fact that defendants would benefit financially from the transactions. Defendants are willing to sacrifice short term gain in order to make long term monopolistic profits. Defendants long term monopolistic profits come from competing shows that feature Christian and Jewish history and theology that are commercially profitable for defendants.

## ATTACHED E MAIL FROM COX SALES MANAGER PROVES DEFENDANTS REFUSE TO SELL COMMERCIAL AIRTIME TO COMPETING SHOWS

14   To prove to the Court, that Defendants do in fact have a policy and practice of refusing to sell commercial airtime to competing shows, Plaintiff refers the Court to Exhibit A.

15   Exhibit A is an e mail conversation between Plaintiff and DeAnn Waldron, a Cox sales manager.

16   Exhibit A shows that on November 10, 2011, Plaintiff requested rate cards to purchase time spots on Cox cable television. Exhibit A also shows Plaintiff requested standard information to assist the buyer in determining whether Cox production services should also be purchased.

17   Exhibit A shows that on November 22, 2011, DeAnn Waldron responded to Plaintiff's requests by saying Cox is not interested in a business relationship.

18   The e mail from the Cox sales manager proves, Defendants do have a policy and practice to destroy competition in the media communications industry with ruthless malice.

19    The attached e mail from the Cox sales manager proves, Defendants will only sell commercial airtime to market shows that feature Christian and Jewish history and theology.

20    The attached e mail from the Cox sales manager proves, Defendants have terminated dealing with Plaintiff, in order to destroy competition in the media communications industry, and to unreasonably restrain trade in the commercial market for religion based television programs and consumer products.

21    Defendants have no legitimate business reason for refusing to sell commercial airtime to competing shows.

22    It is feasible for Defendants to allow competitors access to commercial airtime on Cox cable television.

23    The attached e mail from the Cox sales manager proves, Defendants denied the competitor access to the essential facility cable television and Defendants refuse to sell commercial airtime to competing shows.

24      Defendants have stated that they are denying plaintiff access to the essential facility of cable television because of prior litigation. Defendants claim there is a risk they will be sued again if they sell plaintiff commercial airtime. The two prior lawsuits were filed in good faith to challenge Defendants anticompetitive distribution of free public service airtime. The Court ruled that free public service airtime is a form of charitable giving that cannot be the basis for an antitrust lawsuit. This case does not involve free public service airtime. This case involves commercial airtime and paid programming, and defendants know full well that there is no risk that they will be sued over commercial airtime and paid programming because ALL contracts for the sale of commercial airtime on Cox cable television REQUIRES the buyer to waive any rights to sue. In other words, there is NO risk defendants will be sued over commercial airtime and paid programming. Defendants claim that there is a risk they will be sued over the sale of commercial airtime and paid programming is totally false and proves that defendants intent is the elimination and destruction of competition.

And so defendants termination of dealing with Plaintiff demonstrates defendants monopolistic intent and is based on defendants anticompetitive motives and intent.  Defendants now refuse to sell plaintiff commercial air time on Cox cable television because defendants do profit from refusing to sell commercial air time to competing shows... competing shows that do not feature Christian and Jewish history and theology.  Defendants will only sell commercial air time to market shows that feature Christian and Jewish history and theology. Defendants will only allow Christian and Jewish productions to engage in commercial business on Cox cable television.

### COX CABLE TELEVISION EQUIPMENT AND SYSTEM CONSTITUTES AN ESSENTIAL FACILITY FOR COMPETITION IN THE MEDIA COMMUNICATIONS INDUSTRY

25   Cox cable television does have an unregulated exclusive franchise in every community in the United States where Cox cable television operates.

26   There is no government agency with powers to enforce fair and open access to Cox cable television services.

27   There is no government agency with powers to protect

competition in the media communications industry or the commercial market for religion based television programs and consumer products.

28  The Kansas Corporation Commission (KCC) has stated the state has no regulatory authority over Cox cable television.

29  Cox cable television does have dominant influence in every community in the United States where Cox cable television operates.

30  Cox cable television dominates all local broadcast stations and all distant broadcast stations in every community in the United States where Cox cable television operates.

31  97% of all TV households subscribe to Cox cable television in every community in the United States where Cox cable television operates.

32  Cox cable television has total control over access to all cable networks in every community in the United States where Cox cable television operates.

33  Cox cable television has total control over all access to cable television services in every community in the United States where Cox cable television operates.

34   Defendants do have a total monopoly over all cable television services in every community in the United States where Cox cable television operates.

35   Cox cable television equipment and system is an essential facility for competition in the media communications industry, and for the commercial marketing of religion based television programs and consumer products.

36   Defendants do have total control over Cox cable television.

37   Defendants are a monopolist, with a duty to share Cox cable television services with a competitor in the media communications industry.

38   Cox cable television totally dominates all television in every community in the United States where Cox cable television operates. Cox cable television services can not be practically or reasonably duplicated.

39   It is feasible for Defendants to allow competitors access to commercial air time on Cox cable television.

40   There is no government agency with power to enforce fair and equal access to Cox cable television services.

41    Defendants have terminated dealing with plaintiff in order to destroy competition in the media communications industry with ruthless malice, and to unreasonably restrain trade in the commercial market for religion based television programs and consumer products.

42    Defendants have terminated dealing with plaintiff and will not sell plaintiff any more commercial air time... because defendants do have a policy and practice of selling commercial air time only to market shows that feature Christian and Jewish history and theology. And Cox does profit commercially by only allowing Christian and Jewish shows to engage in commercial business on Cox cable television.

## SUMMARY OF THIS CAUSE OF ACTION

43    Defendants own and control one third of the cable television system in the United States. In each and every community throughout the United States, where Cox cable television operates, defendants totally dominate all television, because defendants do have an exclusive unregulated franchise in each and every one of those communities. And because of defendants unregulated franchise millions of Americans are forced to pay for Cox cable television

13

because there is no practical alternative, while at the very same time Cox continues to use its unregulated monopoly to deprive the audience of the benefits of competition in the media communications industry.

45      Cox cable television equipment and system is an essential facility for the commercial marketing of religion based television programs and consumer products.

46      This action is necessary because without fair and open access to the essential facility of cable television consumers are denied the benefit of choice, because competing shows that feature religion are not allowed by Cox.

47      Cox does profit commercially from only allowing Christian and Jewish productions to engage in commercial business on Cox cable television. And Cox does have a monopolistic financial interest in only selling commercial airtime to market religion based shows that feature Christian and Jewish history and theology.

48      Defendants have terminated dealing with plaintiff because defendants do have a policy and practice to destroy competition in the media communications industry with ruthless malice.

49  Defendants do have a duty to allow competitors fair and open access to commercial air time on Cox cable television because Cox cable television is an essential facility, for competition in the media communications industry, and for the commercial marketing of religion based television programs and consumer products.

## CLAIM FOR RELIEF
## VIOLATION OF SECTION 2 OF THE SHERMAN ACT
## FOR MONOPOLIZATION AND
## DENIAL OF ACCESS TO AN ESSENTIAL FACILITY

50  Plaintiff incorporates by this reference each and every factual allegation of paragraphs 1-34 above.

51  Defendants do own and control Cox cable television.

52  Plaintiff is a competitor of defendants in the media communications industry.

53  Cox cable television system and equipment is an essential facility for competition in the media communications industry and for the commercial marketing of religion based television shows and consumer products.

54  Defendants do have a duty to allow competitors fair and open access to commercial air time on Cox cable television because

Cox cable television is an essential facility for competition in the media communications industry and for the commercial marketing of religion based television shows and consumer products.

55   Defendants have terminated dealing with plaintiff, and will not sell plaintiff any more commercial air time, and have refused plaintiff access to Cox cable television services.

56   Cox cable television is unregulated by the government.

57   It is feasible for Defendants to allow competitors access to commercial air time on Cox cable television.

58   Defendants have terminated dealing with plaintiff because defendants do gain monopolistic profit by refusing to sell commercial air time to competing shows that do not feature Christian and Jewish history and theology.

59   Defendants refusal to sell commercial airtime to competing shows harms consumers and competition, and is the type of anticompetitive conduct the antitrust laws were intended to prevent.

60   A not insubstantial amount of interstate commerce in the commercial religion based television program and consumer products

has been and continues to be affected by defendants illegal conduct, and defendants refusal to allow competing shows access to Cox cable television, harms consumers and harms competition.

61  As a direct result of defendants violations of Section 2 of the Sherman Act, plaintiff has been injured and continues to be injured in his business and property in an amount to be decided at trial, which amount is to be trebled per 15 USC Section 15.

62  As a direct result of defendants violation of Section 2 of the Sherman Act plaintiff has suffered and will continue to suffer irreparable harm unless defendants are restrained and enjoined by this Court from denying competitors access to Cox cable television services.

## PRAYER

Plaintiff prays for judgment against defendants as follows:

1. For a preliminary and permanent injunction on the claim for relief prohibiting defendants, their officers, directors, employees, agents, or anyone acting on their behalf from:

a. denying access to commercial air time on Cox cable television to plaintiff or any other competitor in the media communications industry;

b.  denying access to Cox cable television services to plaintiff or any other competitor in the media communications industry.

2.  For a preliminary and permanent injunction on the claim for relief ordering defendants to:

a.  provide access to commercial air time on Cox cable television to plaintiff or any other competitor in the media communications industry;

b.  provide access to Cox cable television services to plaintiff or any other competitor in the media communications industry.

3.  For treble damages in an amount to be decided at trial on Claim for Relief.

4.  For attorneys' fees and costs incurred in this action.

5.  For any other relief the Court feels is right.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues triable by jury.

## PLACE OF TRIAL

Plaintiff designates Kansas City, Kansas as the place of trial.

DATED:

**Lionel Drake**

2833 SE Indiana Ave.

Topeka, KS 66605

785 350-1535

holymural@gmail.com


Certificate of Service

I certify a copy of this AMENDED COMPLAINT was mailed first class US mail on _____5-29-12_____ addressed to: James M Armstrong 1551 N Waterfront Parkway, Suite 100, Wichita, KS 67206.

**Drake, Lionel, HRC**

**From:** Drake, Lionel, HRC
**Sent:** Friday, November 25, 2011 8:14 AM
**To:** 'writeamericawrite@gmail.com'
**Subject:** FW: Request for Rate Cards

**From:** deann.waldron@coxmedia.com [mailto:deann.waldron@coxmedia.com]
**Sent:** Tuesday, November 22, 2011 1:58 PM
**To:** Drake, Lionel, HRC
**Subject:** RE: Request for Rate Cards

Mr. Drake,

We received your request and we are not interested in a business relationship at this time.
Thank you,
DeAnn

**COX Media**

DeAnn Waldron | Local Sales Manager
931 SW Henderson Road | Topeka, KS 66615 | 785-215-6856 tel | 785-215-6127 fax | 735-207-0314 cell
519 Richards Drive | Manhattan, KS 66502 | 785-320-6555 tel | 785-215-6127 fax | 785-207-0314 cell
coxmedia.com
Please consider the environment before printing this email.

**From:** Drake, Lionel, HRC [mailto:Lionel.Drake@va.gov]
**Sent:** Tuesday, November 22, 2011 10:17 AM
**To:** Waldron, Deann (CMI-Central Region)
**Subject:** FW: Request for Rate Cards

This request was only for paid time... no request for free time... did you receive the message below?

**From:** Drake, Lionel, HRC
**Sent:** Thursday, November 10, 2011 11:03 AM
**To:** 'deann.waldron@coxmedia.com'
**Subject:** Request for Rate Cards

Hi Deann, we would like to buy some spots, please e mail me the current rate cards for Wichita and Topeka, also I would like to use Cox production services for these spots, does Cox charge by the hour for production time? Let me know who I need to talk to about whether Cox production services are right for our needs... Thank you for your time in this matter.

Lionel Drake

**EXHIBIT A**