# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

LIONEL DRAKE,

    *Plaintiff,*

vs.

COX ENTERPRISES, INC.;
COX COMMUNICATIONS, INC.;
COX COMMUNICATIONS OF KANSAS,
LLC; AND COX MEDIA, LLC,

    *Defendants.*

Case No. 12-2115-EFM-JPO

## MEMORANDUM AND ORDER

Pro se Plaintiff Lionel Drake brings a claim under the Sherman Act against four defendants. He contends that Defendants violated federal antitrust laws because they refused to allow him access to cable television. The Court dismisses Plaintiff's complaint because he fails to sufficiently state a claim.

### I.    Factual and Procedural Background

Plaintiff Lionel Drake asserts that he is a freelance writer and television producer.[1] There are four named Defendants: Cox Enterprises, Inc.; Cox Communications, Inc.; Cox Communications of Kansas, LLC; and Cox Media, LLC. Plaintiff asserts that Cox Enterprises is

---

[1] The Court relies on the facts asserted in the Amended Complaint (Doc. 11).

a media communications company which owns and controls the other Defendants.[2] And Plaintiff contends that Cox Enterprises owns and controls Cox cable television, "which comprises more than one third of America's dominant communications network, cable television."[3]

Plaintiff produces 30-second television shows that provide news, educational information, and entertainment. These 30-second television shows "offer[] consumers alternative views on religious thought."[4] Plaintiff contends that his shows have previously been shown on Cox cable television in 2006 and 2009. Plaintiff also offers religion-based consumer products such as books, CDs, and DVDs.

In the Amended Complaint, Plaintiff alleges that "Defendants refuse to sell plaintiff any more commercial air time on Cox cable television as they have in the past, despite the fact that defendants would benefit financially from the transactions."[5] Plaintiff attaches an email conversation to his Amended Complaint in which he contends demonstrates Defendants' policy and practice to destroy competition in the media communications industry. In this email exchange between Plaintiff and Ms. Waldron, a Cox sales manager, Plaintiff indicates he would like to purchase time spots and requests the "current rate cards." Ms. Waldron's return email states: "We received your request and we are not interested in a business relationship at this time. Thank you."[6]

---

[2] Other than identifying Cox Enterprises as the company who owns the other Defendants, Plaintiff does not identify specific actions to any particular Defendant.

[3] Amended Complaint, Doc. 11, p. 2 ¶ 5.

[4] *Id.* at p. 6, ¶ 12.

[5] *Id.* at ¶ 13.

[6] *Id.* at p. 20.

Plaintiff claims that he seeks relief under Section 2 of the Sherman Act. He contends that Defendants terminated dealing with him because Defendants "gain monopolistic profit by refusing to sell commercial air time to competing shows that do not feature Christian and Jewish history and theology."[7] Plaintiff also contends that "Defendants refusal to sell commercial air time to competing shows harms consumers and competition, and is the type of anticompetitive conduct the antitrust laws were intended to prevent."[8]

Plaintiff seeks an injunction prohibiting Defendants from denying access to (and ordering Defendants to provide) commercial air time on Cox cable television or Cox cable television services to Plaintiff or any other competitor. He also seeks treble damages in an amount to be decided at trial.

Defendants filed a Motion to Dismiss (Doc. 6) arguing that Plaintiff failed to state a claim and that the Court lacks personal jurisdiction over two of the four Defendants. Instead of filing a response to Defendants' motion, Plaintiff filed an Amended Complaint. Defendants again filed a Motion to Dismiss (Doc. 12) asserting the same arguments—only based on the allegations in Plaintiff's Amended Complaint.

Plaintiff filed his response and included a Motion for Oral Arguments (Doc. 18). He also filed two other motions: a Motion for the Appointment of a Muslim Federal Judge (Doc. 16), and a Motion to Amend Complaint (Doc. 23). The Court addresses all of these motions below.

## II. Defendants' Motion to Dismiss

To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, to "raise a right to relief above the speculative level" and must contain "enough facts to

---

[7] *Id.* at p. 16, ¶ 58.

[8] *Id.* at ¶ 59.

state a claim to relief that is plausible on its face."[9] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[10] The plausibility standard enunciated in *Bell Atlantic v. Twombly*, seeks a middle ground between heightened fact pleading and "allowing complaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause action,' which the Court stated 'will not do.' "[11] A claim is facially plausible if the plaintiff pleads facts sufficient for the court to reasonably infer that the defendant is liable for the alleged misconduct.[12] The *Twombly* standard is particularly relevant in this case as this case is an antitrust action.[13]

Because Plaintiff is a pro se litigant, the court must construe his pleadings liberally and apply a less stringent standard than that which is applicable to attorneys.[14] However, the court may not provide "additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."[15] The court need only accept as true the plaintiff's "well-pleaded factual contentions, not his conclusory allegations."[16]

---

[9] *Twombly*, 550 U.S. at 555, 570.

[10] *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[11] *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[13] *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 320 (3d Cir. 2010) ("*Twombly* is [ ] an essential guide to the application of that [pleading] standard in the antitrust context.").

[14] *Whitney v. New Mexico*, 113 F.3d 1170, 1173 (10th Cir. 1997).

[15] *Id.* at 1173-74.

[16] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citation omitted).

Defendants present several arguments as to why Plaintiff's Amended Complaint should be dismissed. They first argue that Plaintiff's Amended Complaint should be dismissed because Plaintiff lacks standing under federal antitrust law. "[A]ntitrust standing requires a private plaintiff to show (1) an antitrust injury; and (2) a direct causal connection between that injury and a defendant's violation of the antitrust laws."[17] The injury must not only harm the plaintiff, but must also harm competition in the market.[18] This requirement exists because "it is the protection of competition or prevention of monopoly which is plainly the concern of the Sherman Act, not the vindication of general notions of fair dealing."[19]

In this case, Plaintiff simply alleges that Defendants did not allow him commercial air time. These allegations do not sufficiently plead an antitrust injury because this harm is only to Plaintiff. He also conclusorily alleges that "Defendants' refusal to sell commercial airtime to competing shows harms consumers and competition."[20] But Plaintiff simply states a conclusion. Plaintiff's Amended Complaint contains no factual allegations of an actual adverse effect on competition. Thus, Plaintiff fails to adequately plead an antitrust injury and lacks standing to bring his claim.

Even if Plaintiff could establish standing and an antitrust injury, Plaintiff's claim fails because he fails to provide any facts defining a relevant market. Plaintiff brings a monopoly claim under § 2 of the Sherman Act. This claim has two elements: "(1) the possession of

---

[17] *Tal v. Hogan*, 453 F.3d 1244, 1253 (10th Cir. 2006) (internal quotation marks and citation omitted).

[18] *Four Corners Nephrology Associates, P.C. v. Mercy Med. Ctr. of Durango*, 582 F.3d 1216, 1225 (10th Cir. 2009).

[19] *Id.* (internal quotation marks and citation omitted).

[20] Plaintiff's response to Defendant's Motion to Dismiss also fails to demonstrate that he has standing. Plaintiff addresses the standing issue in two sentences and simply reiterates that he does have standing to sue.

monopoly power in the relevant market and (2) the willful acquisition or maintenance of that power."[21] "Failure to allege a legally sufficient market is cause for dismissal of the claim."[22] A plaintiff must define the relevant proposed market by reference to the rules of reasonable interchangeability and cross-elasticity of demand.[23] "Because the relevant market provides the framework against which economic power can be measured, defining the product and geographic markets is a threshold requirement."[24]

Here, Plaintiff argues that the relevant market is "religion based television shows and religion based consumer products such as books, CDs and DVDs." Plaintiff does not define "religion based" in his Amended Complaint. But in his response to Defendants' Motion to Dismiss, Plaintiff states that "these products sell religion and religious beliefs" and that "ANY television show that features the history or theology of ANY religion, is a religion based show. ALL religion based television shows offer the audience religion based consumer products such as books, CDs, and DVDs." This market description is legally insufficient as it is overly broad. Furthermore, Plaintiff states that books, CDs, and DVDs are part of the relevant market. Yet, none of these products are interchangeable, and the cross-elasticity of demand could not be calculated. Plaintiff even concedes in his response that the rules of reasonable interchangeability and cross elasticity of demand cannot be applied.[25] "Where the plaintiff fails to define its

---

[21] *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1117 (10th Cir. 2008) (internal quotation marks and citation omitted).

[22] *Id.* at 1118.

[23] *Id.* (citing *Queen City Pizza, Inc. v. Domino's Pizza, Inc*., 124 F.3d 430, 436-37 (3d Cir. 1997)).

[24] *Id.* (citation omitted).

[25] Plaintiff claims that he references these rules, but "the rules of reasonable interchangeability and cross elasticity of demand cannot be applied to these type of products because it is impossible for anyone to say that the views and beliefs of one religion can be interchanged with another." Doc. 17, ¶ 50.

proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand . . . the relevant market is legally insufficient and a motion to dismiss may be granted."[26]

Furthermore, there are no facts alleged to support a legally sufficient geographic market. Plaintiff defines the relevant geographic market several different ways in his Amended Complaint.[27] In his response to Defendants' Motion to Dismiss, he states that the relevant geographic market is the United States. Although a national market may be appropriate in certain antitrust cases,[28] it is not appropriate here. Plaintiff cannot credibly allege that Defendants control the only media in which advertising for "religion based shows and products" can be distributed in the United States.[29] Furthermore, he does not, and cannot, allege that cable television distributed through Cox Communications of Kansas and Cox Media is the only vehicle in which to advertise his religion based television shows and consumer products. Thus, Plaintiff fails to sufficiently allege a relevant market. Accordingly, the Court grants Defendants' Motion to Dismiss for failure to state a claim.

### III. Plaintiff's Motion to Amend Complaint

Plaintiff also filed a Motion to Amend Complaint under Fed. R. Civ. P. 15(a)(2). In this motion, he requests that if the Court dismisses his Complaint, it should do so without prejudice, granting him leave to amend his complaint after explaining the basis for dismissal. Plaintiff's

---

[26] *Queen City Pizza*, 124 F.3d at 436.

[27] He defines the geographic market as the United States, eighteen states in the United States, and any community in the United States where Cox cable television operates.

[28] *See United States v. Grinnell Corp.*, 384 U.S. 563, 575 (1966) (finding that the geographic market was national because the burglary and fire protection service stations were operated on a national level).

[29] Indeed, in one of Plaintiff's allegations in his Amended Complaint, he contends that Cox Enterprises (or Cox cable television) comprises one third of communications networks.

motion fails to comply with D. Kan. Rule 15.1(a) requiring a party to "set forth a concise statement of the amendment or leave sought" and to "attach the proposed pleading or other document." His motion is two pages, and he does not inform the Court for any basis of amending his complaint. Nor does he attach a proposed amended complaint. Indeed, it appears as if Plaintiff seeks the Court's direction as to what will cure his deficient complaint if the Court finds it deficient. While the Court recognizes that Plaintiff is proceeding pro se, the Court cannot "assume the role of advocate for the pro se litigant."[30]

If a pro se complaint is deficient and the plaintiff can correct the deficiencies, the court should generally dismiss the complaint without prejudice and with leave to amend.[31] In this case, any amendment would be futile. Plaintiff has already filed two complaints in this case. His first complaint was fourteen pages with forty-eight numbered allegations. After Defendants filed their first Motion to Dismiss arguing that Plaintiff failed to state a claim, Plaintiff filed an Amended Complaint in an effort to cure those deficiencies. His Amended Complaint is twenty pages long with sixty-two numbered allegations and an email attached as an exhibit. His Amended Complaint fails to state a claim. Plaintiff's allegations are conclusory and lacking substance. There is no reason to believe that a Second Amended Complaint would include sufficient facts to correct the deficiencies. Thus, the Court denies Plaintiff's Motion to Amend Complaint.

---

[30] *Hall*, 935 F.2d at 1110. The Court notes that this lawsuit is Plaintiff's second lawsuit in federal district court against Defendant Cox Communications, Inc. In the prior lawsuit, Case No. 10-2671, Plaintiff alleged that Defendant violated antitrust law by refusing to allow him free cable air time to broadcast his political commentary. In that case, he also sought leave to amend his complaint if the Court found it insufficient in any area. The Court denied his request because it would be futile. Now, it appears as though Plaintiff alleges different factual circumstances in an effort to bring essentially the same claim.

[31] *See Reynoldson v. Shillinger*, 907 F.2d 124, 126 (10th Cir. 1990).

### IV. Plaintiff's Motion for the Appointment of a Muslim Federal Judge

Plaintiff also has a motion seeking the appointment of a Muslim federal judge to preside over this case (Doc. 16). Plaintiff contends that his case "challenges the Christian Jewish programming monopoly on Cox cable television." He then conclusorily contends that if the undersigned judge "is a Christian or a Jew," he may have a personal interest in "maintaining the Christian Jewish programming monopoly" and should recuse himself to avoid the appearance of bias.

Pursuant to 28 U.S.C. § 455(a), any judge of the United States "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned." Section 455(b)(1) requires a judge to recuse himself if "he has a personal bias or prejudice concerning a party," while § 455(c) requires a judge to "inform himself about his personal . . . interests." The test in determining whether a judge should disqualify himself is an objective one and requires recusal only if "a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality."[32] There must be a "reasonable *factual* basis [ ] for calling the judge's impartiality into question."[33]

In this case, Plaintiff puts forth no facts as to why the undersigned's impartiality may be called into question. He simply speculates that the undersigned is a "Christian or a Jew" and that this religious affiliation could affect the outcome of the case. "An unsubstantiated suggestion of personal bias or prejudice is insufficient to mandate recusal under section 455(a)."[34] Even

---

[32] *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 659 (10th Cir. 2002) (quotation marks and citation omitted).

[33] *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993).

[34] *Willner v. Univ. of Kansas*, 848 F.2d 1023, 1027 (10th Cir. 1988).

assuming that the undersigned may be Christian or Jewish, "courts have consistently held that membership in a church does not create sufficient appearance of bias to require recusal."[35] In *Bryce v. Episcopal Church in the Diocese of Colorado*, the Tenth Circuit found that although the lawsuit before the district judge involved an Episcopal church, the district judge's membership in another Episcopal church was insufficient to create an appearance of bias and did not require recusal.[36] Similarly, no reasonable person would have doubts about the judge's impartiality in this case. Furthermore, Plaintiff specifically seeks the appointment of a Muslim judge. "The [recusal] statute is not intended to give litigants a veto power over sitting judges, or a vehicle for obtaining a judge of their choice."[37] Accordingly, Plaintiff's Motion for the Appointment of a Muslim Federal Judge is denied. Plaintiff's request for oral argument on this motion is also denied.

**IT IS ACCORDINGLY ORDERED** this 13th day of February, 2013, that Defendant's Motion to Dismiss (Doc. 6) is hereby **DENIED AS MOOT**.

**IT IS FUTHER ORDERED** that Defendant's Motion to Dismiss (Doc. 12) is **GRANTED**.

**IT IS FUTHER ORDERED** that Plaintiff's Motion for the Appointment of a Muslim Federal Judge (Doc. 16) is **DENIED**.

---

[35] *Bryce*, 289 F.3d at 660.

[36] *Id.*

[37] *Cooley*, 1 F.3d at 993.

**IT IS FUTHER ORDERED** that Plaintiff's Motion for Oral Arguments (Doc. 18) is **DENIED**.

**IT IS FUTHER ORDERED** that Plaintiff's Motion to Amend Complaint (Doc. 23) is **DENIED**.

**IT IS SO ORDERED**.

*[signature]*
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE